UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRUCE D.,[1]

    **Plaintiff,**

v.

    Case No. 3:20-cv-0218
    Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Bruce D. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 10, *Defendant's Memorandum in Opposition*, ECF No. 13, *Plaintiff's Reply*, ECF No. 14, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

On August 25, 2016, Plaintiff filed his current application for benefits,[3] alleging that he has been disabled since March 19, 2010. R. 241–46. The application was denied initially and on reconsideration, R. 110–48, and Plaintiff requested a *de novo* hearing before an administrative law judge. Administrative Law Judge ("ALJ") Stuart Adkins held a hearing on December 19, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 44–72. In a decision dated February 26, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from the date on which the application was filed through the date of that decision. R. 15–36. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 8, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 2. On March 23, 2022, the case was reassigned to the undersigned. ECF No.16. The matter is ripe for disposition.

II.     LEGAL STANDARD

   A.      **Standard of Review**

In reviewing applications for social security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] Plaintiff filed two prior applications for Supplemental Security Income, both of which were denied. R. 73–90, 91–109.

2

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

  **B.**  **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden

shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 29 years old on the date on which the application was filed. R. 35. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, migraines, arthritis, depression, anxiety, degenerative joint disease, degenerative disc disease of the lumbar spine, adjustment disorder, personality disorder, and myoclonus. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with lifting and/or carrying twenty pounds occasionally and ten pounds frequently. The claimant is able to sit for about six hours in an eight-hour workday, but he is limited to standing and/or walking for about four hours per eight-hour workday with permission to alternate between sitting and standing every twenty minutes while at the work station. The claimant is limited to frequent pushing and/or pulling with the lower extremities and frequent handling, fingering, and feeling bilaterally. He is limited to no climbing of ladders, ropes, and scaffolds with occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant should avoid concentrated exposure to extreme cold or vibration, and he should avoid unprotected heights, dangerous machinery, or commercial driving. The claimant is capable of performing simple, routine tasks but not at a production rate pace. *He is capable of occasional interactions with supervisors and coworkers,* but he is limited to no interaction with the general public. The claimant is able to tolerate occasional changes to a routine work setting defined as one to two per week.

R. 20 (emphasis added). The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work. R. 34.

At step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs–jobs as a weight recorder, photocopying machine operator, and merchandise marker—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 36. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from the application date through the date of the administrative decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps four and five, arguing that the ALJ substituted his lay interpretation and opinion for those of the medical professionals, and he argues that the Commissioner failed to carry the Commissioner's burden at step five of the sequential evaluation. He asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 14. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 13.

IV. **RELEVANT EVIDENCE AND DISCUSSION**

Although Plaintiff alleges that he is disabled by both physical and mental impairments, and the ALJ found that Plaintiff suffers from both severe physical and mental impairments, the Court concludes that the determinative issue relates to Plaintiff's severe mental impairments of depression, anxiety, adjustment disorder, and personality disorder and the effect of those impairments on his RFC.

6

David L. Lauffenburger, M.A., treated Plaintiff from September 2016 through March 2017. Plaintiff reported a history of suicidal thoughts. R. 397, 438.[4] His mood was moderately depressed and he was severely anxious. R. 397, 439. He has difficulty around people, and experiences panic attacks and irritability. R. 397. Mr. Lauffenburger diagnosed generalized anxiety disorder, R. 441, and opined that Plaintiff's symptoms impair his concentration, attention and short term memory. R. 397. On clinical examination, Plaintiff's insight was poor; his judgment was fair. *Id.* His ability to remember, understand, and follow directions, his ability to maintain attention and sustain concentration, persist at tasks, and complete them in a timely fashion were all chronically "impaired" by his diagnoses. *Id.* Plaintiff was severely isolated and withdrawn, and he had poor adaptability. R. 398.

In December 2016, Alan R. Boerger, Ph.D., performed a consultative psychological examination of the Plaintiff at the request of the state agency. R. 402–08. On clinical examination, Plaintiff's speech and thought processes were appropriate, relevant, and coherent; his affect was appropriate. R. 406. He was alert and oriented. *Id.* Dr. Boerger diagnosed generalized anxiety disorder and major depressive disorder, recurrent and moderate, dating to childhood and which were "likely to continue for the indefinite future." R. 407. According to Dr. Boerger, Plaintiff could understand instructions but was variable in his ability to maintain pace and concentration "depending on his level of distraction from anxiety." R. 407–08. According to Dr. Boerger, Plaintiff "worr[ies] about others['] perception of him and gets anxiety in interaction with others. He has a relative isolated lifestyle," and his anxiety and concern about others' opinion about him "are likely to result in sensitivity to criticism and reduced frustration tolerance and reduced ability to deal with work pressures in the work setting." R. 408.

---

[4] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

Paul Tangeman, Ph.D., reviewed the record on behalf of the state agency that same month and opined that Plaintiff's symptoms had not improved despite treatment and cause "more than mild impact" on his activities of daily living, social functioning, and sustained concentration, persistence and pace. R.119. Specifically, Dr. Tangeman characterized as "marked" Plaintiff's difficulty in maintaining social functioning. *Id.* "Clmt is capable of superficial social interactions with familiar coworkers and supervisors. He should avoid contact with the general public due to unstable mood with reported episodes of irritability towards others. He would perform best in a solitary setting." R. 124.

In March 2017, Kristen Haskins, Psy.D., also reviewed the file and opined that Plaintiff's ability to interact appropriately with the general public is "markedly limited" and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes was "moderately limited." R. 144. "Clmt is capable of superficial social interactions with familiar coworkers and supervisors. He should avoid contact with the general public due to unstable mood with reported episodes of irritability towards others. He would perform best in a solitary setting." *Id.*

> The ALJ accorded "partial weight" to these opinions. R. 31-33.
>
> Drs. Tangeman and Haskins opined the claimant was capable of superficial social interactions with familiar coworkers and supervisors, and he should avoid contact with the general public. They opined the claimant would perform best in a solitary setting.
> \*\*\*
> [T]he opinions of Drs. Tangeman and Haskins are only somewhat supported by the record. While the claimant complained of depression and anxiety throughout the record, he was not as limited as opined by Drs. Tangeman and Haskins. For example, the claimant performed relatively well on his psychological consulatative examination and he did not display any outward signs of depression or anxiety. Additionally, the claimant has received relatively little treatment from mental healthcare professions despite advice to do so, indicating a higher level of mental functioning than opined by Drs. Tangeman and Haskins.

R. 32 (citations to record omitted). In according only "partial weight" to the opinion of Dr. Boerger, the consultative examining psychologist, the ALJ characterized the opinion as "vague in parts" and observed that the doctor "did not report specific limitations with respect to interacting with others…." *Id*. The ALJ also accorded "partial weight" to the opinion of Mr. Lauffenburger, Plaintiff's treating therapist:

> He opined the claimant was severely isolated and withdrawn with poor adaptability and difficulty adapting to pressures.… In addition to being vague, Mr. Lauffenburger's opinions were not entirely supported by the record. For example, he opined severe social limitations, but his treatment notes also demonstrate that the claimant was able to go to the movies by himself, demonstrating a higher level of social functioning than opined by Mr. Lauffenburger. Nevertheless, the record does support finding some limitations.

R. 33 (citations to record omitted).

The ALJ asked the vocational expert to assume a claimant with Plaintiff's vocational profile and the RFC for a limited range of light work as ultimately found by the ALJ, including a limitation to "occasional interaction with supervisors and coworkers." R. 66-67. In response, the vocational expert testified that such an individual could perform work that exists in significant numbers in the national economy. R. 67. Plaintiff's counsel then inquired of the vocational expert as follows:

> Q. So, with the occasional contact with the co-workers and supervisors, if somebody is having trouble with that, I mean would they be able to work in isolation in any of the jobs that you've given?
>
> A. No. And, in my opinion if an individual has to work in isolation it's work preclusive.

R. 69.

As noted above, the ALJ found that Plaintiff has the RFC for a limited range of light work, further limited to "occasional interactions with supervisors and coworkers." R. 20. Plaintiff argues that this RFC determination is not supported by substantial evidence because,

9

among other things, the ALJ failed to include a limitation to only "superficial" interaction with supervisors and coworkers, as opined by the state agency reviewing psychologists, or to explain this omission. The Acting Commissioner argues that this omission is immaterial because the term "superficial" has no formal definition and cannot be measured. *Defendant's Memorandum in Opposition*, ECF No. 13, PageID# 1071-72.

Many courts considering this issue, including this Court, have determined that the term "occasional," which refers to the frequency of the interaction, is not the equivalent of the term "superficial," which refers to the quality of the interaction. *See, e.g., Spinner v. Comm'r of Soc. Sec.*, No. 2:20-cv-4676, 2021 WL 7908552, at *2 (S.D. Ohio Nov. 29, 2021); *Greene v. Saul*, No. 3:19-cv-0687, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020); *Midlam v. Berryhill*, No. C17-5650, 2018 WL 2932134, at *2 (W.D. Wash. June 12, 2018); *Oakley v. Colvin*, No. 15-cv-644, 2016 WL 4272136, at *9 (S.D. Ill. Aug. 15, 2016). *But see Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017); *Ward v. Comm'r of Soc. Sec.*, 18-cv-1317, 2020 WL 3035850, at *3 (W.D.N.Y. June 5, 2020).

It is the ALJ who is charged with determining a claimant's RFC. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). However, an ALJ's RFC determination, as with all the ALJ's findings, must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971). Moreover, the applicable regulations require that an ALJ explain the weight assigned to the opinions of all medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

10

20 C.F.R. § 416.927(e)(2)(ii). In the case presently before the Court, the ALJ failed to explain why he included a limitation to "occasional" contact with supervisors and coworkers, but not a limitation to "superficial" contact, as opined by the reviewing state agency psychologists. Although an ALJ is not required to adopt a medical opinion that would limit a claimant to only superficial interaction with supervisors and coworkers, the ALJ must, as with any assessment of a medical opinion, explain why that opinion is not supported by the evidence in the record. Because the ALJ in this action failed to do so, the matter must be remanded to the Commissioner for further consideration of this issue.

## V. CONCLUSION

For these reasons, the Court **GRANTS** *Plaintiff's Statement of Errors*, **REVERSES** the Commissioner's decision, and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  June 9, 2022                               *s/Norah McCann King*
                                            NORAH McCANN KING
                                     UNITED STATES MAGISTRATE JUDGE